UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICK SCRIMA,
        Plaintiff,

v.    C.A. No.

DOROTHY KELLY GAY,
IN HER INDIVIDUAL AND
OFFICIAL CAPACITY and
THE CITY OF SOMERVILLE,
        Defendants.

## COMPLAINT

A.   JURISDICTIONAL STATEMENT

This case is also brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution. Federal jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343.

This Court is asked to exercise its pendant jurisdiction over the State claims because the State claims arise from a common nucleus of operative facts as the Federal claims. This Complaint is related to Docket No. 02-12267, currently pending before Judge Zobel.

B.   PARTIES TO THE ACTION

1.   The Plaintiff Patrick Scrima is a resident of the County of Middlesex, Commonwealth of Massachusetts.

2. Defendant Dorothy Kelly Gay (hereinafter Mayor Gay) is a resident of the City of Somerville, County of Middlesex, and Commonwealth of Massachusetts. Mayor Gay was, at all relevant times to this complaint, the Mayor of the City of Somerville. Mayor Gay is being sued in her official capacity as well as in her individual capacity.

3. Defendant, City of Somerville, is a governmental entity incorporated in Middlesex County, Commonwealth of Massachusetts.

## FACTUAL BACKGROUND

4. Patrick Scrima, hereinafter the Plaintiff, began working for the City of Somerville on or about March of 1990.

5. In or about October of 1999 the Plaintiff was appointed to the position of Superintendent of Inspectional Services of the City of Somerville, reporting directly to the Commissioner of Public Works.

6. The general job duties of the Superintendent of Inspectional Services are to enforce and uphold the Massachusetts Building Code, the Somerville Zoning Ordinance and to supervise the city building inspectors and to oversee the day-to-day operations of the Inspectional Services Division of the City of Somerville.

7. During the relevant time period the Plaintiff reviewed every permit that was issued by the Inspectional Service Department.

8. The Plaintiff was subpoenaed to appear and testify at a deposition held on October 11, 2001.

9. The deposition was taken by Brian Hurley of Rachman, Sawyer & Brewster in the case of <u>George Vroom v. James Douglas and Steven Caruso, the Somerville Zoning Board of Appeals and Patrick Scrima in his official capacity</u>.

10. During the deposition, the Plaintiff testified concerning property located at One/Two/Three/Four Hayden Terrace, Somerville.

11. The Plaintiff answered questions posed to him and testified about the improper interference in the normal building permit process by City Solicitor Susan Callahan and by Mayor Dorothy Kelly Gay. Specifically the Plaintiff testified in the deposition that:

   a. The owner of Hayden Terrace applied for a demolition permit, a building permit and an occupancy permit.

   b. The Plaintiff, acting as the Superintendent of Inspectional Services for the City approved the issuance of the permits sought by the owner of Hayden Terrace.

   c. After the Plaintiff issued the permits he was ordered by the then-City Solicitor Susan Callahan, to revoke the occupancy permit. The Plaintiff did revoke the occupancy permit only because he believed that if he did not revoke the permit his job would be in jeopardy.

   d. The Plaintiff also testified at the deposition that Susan Callahan and Mayor Gay had called Zoning Board members and had pressured them to vote to reverse the Plaintiff's decision to issue a building permit.

12. The Plaintiff also responded to questions posed to him by testifying at the deposition mentioned above that he was ordered by Steven Post, then Director of

Housing and Community Development and Mayor Kelly Gay not to issue a Building Permit to Target Stores for proposed renovations to the former Bradlees Store despite the fact that Target Stores were entitled to a "by right building permit."

13. The Plaintiff testified at the deposition that he had learned that the reason the Mayor had ordered him not to issue the Target permit was that in a meeting with Target representatives, the Mayor had asked a representative of Target Stores by the name of Scott Collum for a million dollars, and Target refused to pay the amount.

14. The Plaintiff also testified in the deposition about undue pressure the Mayor and a former City Solicitor tried to exert over the City of Somerville Zoning Board of Appeals.

15. On information and belief Mayor Kelly Gay improperly and unlawfully sought to coerce Target Stores to pay one million dollars to the City for alleged traffic mitigation as a condition to receive a building permit for which Target was legally entitled without any payment to the City.

16. The Plaintiff was terminated from his position one month after his deposition and two days after Mayor Gay's re-election. The Plaintiff was terminated because he testified truthfully in his deposition and in testifying, exposed the illegal and immoral action of the Mayor and thus exposed the Mayor and her administration to negative publicity.

17. On or about August 22, 2000, the City of Somerville Division of Inspectional Services approved an application for a building permit requested by James Douglas, owner of property located at Hayden Terrace in the City of Somerville.

18. The approval of the permit was by building inspector Steve J. Forristal.

19. The decision to issue the above-referenced building permit was appealed by George Vroom to Superintendent (and Plaintiff) Scrima.

20. The Plaintiff Patrick Scrima replied to the appeal by letter dated April 11, 2001.

21. The Plaintiff, Patrick Scrima upheld the decision of his department to issue the building permit that had been appealed.

22. The Plaintiff's decision was then appealed to the Somerville Zoning Board of Appeals.

23. The Plaintiff was told by City Solicitor Susan Callahan and by others that the Mayor was opposed to the proposed renovation to the Hayden Terrace Property.

24. City Solicitor Susan Callahan and the Mayor spoke to Somerville Zoning Board of Appeals members for the purpose of influencing their vote so that they would vote against the decision of the Plaintiff to uphold the issuance of the Building Permit.

25. City Solicitor Susan Callahan appeared before the Somerville Zoning Board of Appeals. Solicitor Callahan informed the Board that she was speaking on behalf of the Mayor. Solicitor Callahan stated that the Mayor opposed the issuance of the building permit and was in favor of the Board reversing Superintendent Scrima's decision to uphold the issuance of the permit.

26. The Somerville Zoning Board of Appeals voted to uphold Superintendent Scrima's decision to issue the permits.

27. Plaintiff Scrima learned he was named as a party defendant in the case filed by Mr. Vroom appealing the decision of the Somerville Zoning Board of Appeals in the case Vroom v. Douglas, Scrima et al, Land Court No. 274244.

28. Plaintiff Scrima also learned that he was going to be deposed.

29. Plaintiff retained his own attorney to represent him at his deposition in the Vroom v. Douglas case.

30. Mayor Gay was upset with Plaintiff Scrima when she learned he had retained independent counsel. Mayor Gay tried to convince Plaintiff Scrima not to use independent counsel at the Vroom v. Douglas deposition.

31. Plaintiff Scrima was represented by his own attorney, as well as the city's attorney at the Vroom v. Douglas deposition.

32. Mayor Gay decided to terminate the Plaintiff in whole or in part because he insisted on complying with his legal duties and because he insisted on retaining his own attorney to represent him at the above-referenced Vroom v. Douglas deposition.

33. The Plaintiff also stated to the Mayor and the Mayor's aids that Target Stores were entitled to receive a building permit.

34. The Plaintiff's advocacy for the City to abide by the law as it applied to the proposed Target Stores development was a concern to the Mayor who was trying to hold up the Target application process in order to force Target to give one

million dollars to the City, despite the fact that Target has no legal obligation to give any money to the City.

35. On November 9, 2001, Scrima received a letter from Mayor Gay stating:

> This letter serves as formal notice that I have decided to not reappoint you as Superintendent of the Division of Inspectional Services for an annual term pursuant to Title 6, Section 40D of the City of Somerville Charter.
>
> As you are aware, you have not been reappointed for an annual term pursuant to the City Charter since your initial appointment on or about October 6, 1999. Accordingly, your service to the City will cease upon the appointment and qualification of your successor.
>
> You are hereby placed on administrative leave with pay, pending the appointment and qualification of your successor.

36. Scrima was not informed at this time of any right to appeal the failure to reappoint, to the Board of Alderman or to any other entity.

37. Scrima was subjected to an adverse job action by Gay, who was acting under the penumbra of authority contained within Section 40D of the Somerville Charter. Scrima has no option to appeal such action to the Board of Alderman, or any other entity, and so, Gay was the final decisionmaker responsible for making or setting policy with regard to the adverse job action affecting Scrima.

38. In taking the November 9, 2001 adverse employment action against Scrima, Gay did not act under Division 1, § 23 of the Somerville Charter. Section 23 refers to the suspension of officers, and the November 9, 2001 letter to Scrima makes no reference to a suspension, and in fact only refers to a failure to reappoint. Section 23 requires the mayor to report her action any reason(s) therefore to the Board of Alderman "at once." Gay made no such required report. Section 23 establishes that the executive will be removed at the expiration of fifteen days after the report

7

is made to the Board of Alderman. However, Scrima's notice of failure to reappoint stated that he would continue to serve the City until the appointment and qualification of his successor. Finally, in Gay's letter to Scrima, she informed Scrima that she was acting pursuant to Section 40D, as opposed to Section 23.

39. Suspensions under Division 1, § 23 of the Somerville Charter may be grieved to the Board of Aldermen.

40. On July 21, 2004, Defendants, for the first time, alleged that the adverse employment action taken against Scrima was pursuant to Division 1, § 23 of the Somerville Charter.

41. Scrima denies that Gay acted pursuant to Section 23. However, in the alternative, to the extent that Gay did act pursuant to Section 23, she did so in a deceptive manner, in a way which prevented Scrima from exercising his right to appeal Section 23 actions to the Board of Aldermen. On November 5, 2004, Scrima requested a Section 23 hearing before the Board of Aldermen; however, none has been accorded.

42. Even if Gay acted pursuant to Section 23, Mayor Gay acted, in these circumstances as the final decisionmaker responsible for making or setting policy with regard to the adverse job action affecting Scrima.

## COUNT I

### Intentional Interference with Contractual or Prospective Business Relations
### Defendant Gay

43. The Plaintiff realleges, reaffirms and incorporates by reference the facts and allegations stated above.

44. The Plaintiff was subjected to an adverse job action in violation of Massachusetts public policy, based on any one, two, or combination of improper motives: [1] because he insisted on performing the job functions of his position in a correct and ethical manner; [2] because he testified truthfully at a deposition to which he was subpoenaed; and [3] because he insisted on retaining private counsel to represent him in the Vroom Douglas deposition

45. Defendant Gay acted to interfere with Scrima's employment with Somerville, acting with improper means or motive, and acting with actual malice.

### COUNT II

### Violation of Due Process Under 42 U.S.C. § 1983; the Massachusetts Constitutional Right to Due Process, and Division 1, § 23 of the Somerville Charter

46. The Plaintiff realleges, reaffirms and incorporates by reference the facts and allegations stated above.

47. In the alternative to the Plaintiff's assertion that the Mayor failed to reappoint Plaintiff pursuant to Section 40D of the Somerville Charter, to the extent that the Plaintiff was suspended or removed pursuant to Division 1, § 23 of the Somerville Charter, Plaintiff was denied the opportunity to appeal under Section 23.

48. Plaintiff was not informed of the right to appeal, nor was he informed of the correct provision under which the Mayor was acting.

49. The deceptive manner in which the defendants acted prevented Plaintiff from requesting review by the Board of Aldermen.

**Wherefore, the Plaintiff demands that this Court order:**

    a.    that the Defendant compensate Plaintiff for any loss of wages and/or benefits incurred as a result of his termination;

    b.    that the Plaintiff be awarded an amount of money which will fairly compensate him for his emotional and physical pain and suffering;

    c.    that the Plaintiff be awarded Attorney's Fees.

    d.    that the Defendant Mayor Gay be ordered to pay the Plaintiff punitive damages.

    e.    that the Defendant pay the Plaintiff interest on any judgment entered from the time of filing of this suit;

    f.    that Somerville be required to permit Scrima to appeal the November 9, 2001 adverse employment action to the Somerville Board of Aldermen; and

    g.    such relief as may be just and proper and/or which will make the Plaintiff whole.

THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS OF HIS COMPLAINT.

The Plaintiff,
By his Attorneys

Kevin G. Powers, BBO #405020
Robert S. Mantell, BBO #559715
Rodgers, Powers & Schwartz
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 742-7010

scrima federal complaint November 2004